**Alexandria**

FAIRFAX COUNTY

v.

MARIO E. ESPINOLA

No. 1877-89-4

Decided October 2, 1990

Counsel

Peter D. Andreoli, Jr., Senior Assistant County Attorney (David T. Stitt, County Attorney; Robert Lyndon Howell, Deputy County Attorney, on briefs), for appellant.

Gregory C. Mitchell (Dale & Mitchell, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—Fairfax County (the County) appeals a decision of the Industrial Commission awarding benefits to Mario E. Espinola, claimant, for disability due to an occupational disease. On appeal, the County contends that the commission erred in finding that Espinola met his burden of proof under Code § 65.1-46.1 to establish that his hepatitis was compensable. The County also asserts that the commission erred in finding that Espinola had filed his application for hearing within the time limits of Code § 65.1-52. We agree with the commission's decision and affirm.

Espinola worked as a senior medical technician for the Fairfax County Police Department for ten years, beginning in 1976. Throughout his employment, Espinola regularly administered blood tests and breathalyzer tests to persons arrested for driving while intoxicated. He conducted over 5,000 such tests and was exposed to blood approximately 200 times through needle punctures and breaking or seeping vials. On several occasions, he was exposed to blood from persons known to have hepatitis in their medical histories. His last recorded exposure to blood from a suspect who tested positively for hepatitis occurred on December 29, 1983.

Espinola did not have hepatitis when he was hired by the police department in 1976. In 1977, his liver function tests were normal. In 1982, his blood tests showed abnormal liver enzyme levels indicative of hepatitis. In a letter dated July 15, 1988, Dr. Vinod K. Rustgi stated that he saw Espinola in December, 1987, and performed a liver biopsy, which showed evidence of chronic persistent hepatitis. Dr. Rustgi diagnosed that Espinola had chronic non-A, non-B (NANB) viral hepatitis and referred him to the National Institutes of Health in February, 1988. Dr. Rustgi stated in a letter dated September 1, 1988, "Mr. Espinola's abnormal liver enzymes and his NANB hepatitis are most likely due to exposure to blood products during his job with the police department in the past." Dr. Frederic B. Walker, IV, examined Espinola's medical records at the request of the County. He reported on October 30, 1988, that "[i]t is virtually certain that Mr. Espinola acquired the disease as a consequence of his work, perhaps from exposure of 5/12/82."

Espinola's last day of work with the police department was May 17, 1986. He filed an application for hearing on July 1, 1988. A hearing was held before the deputy commissioner on November 22, 1988. The deputy commissioner found that Espinola had not met his burden of proof under Code § 65.1-46.1 because he admitted that he had not, to his knowledge, been exposed to NANB hepatitis and if the hepatitis was contracted as a result of his employment with the police department, he had been infected on or before May 12, 1982, thereby barring his claim under Code § 65.1-52. On review, the full commission reversed, finding that there was sufficient medical evidence to establish with reasonable medical certainty that Espinola contracted NANB hepatitis as a result of long periods of exposure to blood products in his employment and that there was no persuasive evidence of significant exposure outside of his employment. The commission also found that Espinola's application was filed within two years of a communication of diagnosis on December 16, 1987 and within five years of the last injurious exposure on the last day of employment, May 17, 1986.

The County argues that there was not sufficient evidence to show that Espinola had been exposed to NANB hepatitis while employed with the police department. Upon appellate review, the findings of fact of the Industrial Commission will be upheld when supported by credible evidence. *Russell Loungewear v. Gray*, 2 Va. App. 90, 92, 341 S.E.2d 824, 825 (1986). "Whether a disease is causally related to the employment and not causally related to other factors is such a finding of fact." *Island Creek Coal Co. v. Breeding*, 6 Va. App. 1, 12, 365 S.E.2d 782, 788 (1988). We construe the evidence and the inferences therefrom, using familiar principles, in the light most favorable to the party prevailing below. *See, e.g., Crisp v. Brown's Tysons Corner Dodge, Inc.*, 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986). In order for an ordinary disease of life to be compensable as an occupational disease under Code § 65.1-46.1, the claimant must establish by clear and convincing evidence, to a reasonable medical certainty, that the disease (1) arose out of and in the course of employment, (2) did not result from causes outside of the employment, and that (3) it follows as an incident of an occupational disease; or is an infectious or contagious disease contracted in the course of employment in a hospital, sanitarium, public health laboratory or nursing home or in the course of employment as emergency rescue person-

nel; or is characteristic of the employment and was caused by conditions peculiar to the employment. *Breeding*, 6 Va. App. at 9, 365 S.E.2d at 786-87.

The medical evidence in the record strongly supports the commission's finding that Espinola's NANB hepatitis was compensable under Code § 65.1-46.1. The medical experts involved in the case unanimously agreed that Espinola contracted his hepatitis due to the environment in which he worked. Dr. Walker, the expert hired by the County, stated that he was "virtually certain" that Espinola contracted his NANB hepatitis from his employment. Espinola had ten years of exposure to blood and blood products, which came into contact with his skin every day at work, and had suffered over 200 percutaneous exposures from needles and shattered blood vials. He had no significant exposure to blood or blood products outside of his employment.

The commission evaluated Espinola's statement that to his knowledge he was never exposed to NANB hepatitis and concluded that Espinola "knew he risked exposure to hepatitis but was not aware of a specific exposure to NANB." The commission also found that "exposure from contaminated blood products, including contamination by viral hepatitis, is characteristic of the medical technician position held by Espinola." This finding was based on the unanimous opinions of the medical experts, the information in *The Merck Manual of Diagnosis and Therapy* (15th ed. 1987) describing the epidemiology of the illness, and evidence of the conditions of Espinola's employment. The commission's findings regarding the compensability of Espinola's illness are based on credible evidence and will not be disturbed on appeal.

■ The County argues further that Espinola failed to file his application for hearing in a timely manner within the limits prescribed in Code § 65.1-52. The filing of a claim within the statutory period is jurisdictional and the burden of proving a timely application is on the claimant. *Breeding*, 6 Va. App. at 6, 365 S.E.2d at 785 (citations omitted). A claim for an occupational disease must be filed either within "two years after a diagnosis of the disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs." Code § 65.1-52(3). Espinola's uncontradicted testimony established that he was first advised that he had contracted NANB hepatitis by Dr. Rustgi on December 16, 1987

and the commission found that this was the date of his first communication of a diagnosis. Therefore, the filing of his application for hearing on July 1, 1988 was within two years after a first communication of a diagnosis of the disease.

The County asserts that Espinola's last injurious exposure was on May 12, 1982 because this date was the documented exposure to a known carrier of hepatitis relied upon by Dr. Walker in stating his opinion that Espinola's disease was contracted in the course of his employment. However, the commission rejected this reasoning and found that Espinola's last day of work, May 17, 1986, was the date of his last injurious exposure in employment. In reaching this finding, the commission noted that the undisputed evidence established that it was impossible to pinpoint the exact occurrence which exposed Espinola to the disease. Blood tests for hepatitis were recorded for prisoners and suspects only upon special request. His last recorded exposure to blood from a suspect who tested positively for hepatitis occurred on December 29, 1983. This date was within five years of the date on which Espinola filed his application for hearing. He was also exposed to blood and blood products throughout his ten years of employment with the County. Espinola estimated that his skin was accidentally penetrated by needles and he sustained injuries which caused blood from other persons to be on and under his skin approximately twenty times each year. The commission stated that "injurious exposure to hepatitis occurred in a significant number of cases, although not specifically determinable mathematically, and this exposure continued so long as Espinola had regular contact with numerous subjects from whom he drew blood and had percutaneous exposure to their blood in the recurring incidents described in the record."

"Injurious exposure" to an occupational disease, as the term is used in Code § 65.1-52, means "an exposure to the causative hazard of such disease which is reasonably calculated to bring on the disease in question." Code § 65.1-52(3). A claimant can meet the statutory standard either "by establishing actual causation or aggravation of the disease or by showing that the exposure was of such duration and intensity that it generally causes the disease in question, even though actual causation or aggravation cannot be established in the claimant's case." *Breeding*, 6 Va. App. at 7, 365 S.E.2d at 785. The statutory definition of "injurious expo-

sure" supplants the common-law definition and is broader in its scope in order to relieve claimants of the burden of establishing actual causation in cases where such proof is difficult, if not impossible. *Caudle-Hyatt, Inc. v. Mixon*, 220 Va. 495, 499-500, 260 S.E.2d 193, 195-96 (1979). The *Mixon* case dealt with exposure to asbestos. Asbestosis differs in nature from hepatitis because it is a progressive disease which may be latent during the employment and manifest itself many years later, after the cessation of employment. *See Parris v. Appalachian Power Co.*, 2 Va. App. 219, 230, 343 S.E.2d 455, 461 (1986). However, this case involves the same inherent difficulties in establishing a specific and identifiable causative incident which led to the claimant's contraction of his occupational disease. The commission found in this case that "Espinola's exposure was of such duration and intensity over the years that a reasonable and rational determination can readily be made that his employment exposure proximately caused the disease." This finding is supported by the unanimous opinions of the medical experts. We therefore uphold the commission's ruling that Espinola's last day of employment was the date of his last injurious exposure for purposes of Code § 65.1-52.

For the reasons stated above, we affirm the judgment of the Industrial Commission in this case.

*Affirmed.*

Duff, J., and Keenan, J., concurred.